NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BERNARD SHABAZZ,

*Plaintiff*,

v.

NEW JERSEY TRANSIT,

*Defendant.*

Civil Action No. 14-4565

OPINION

**THIS MATTER** comes before the Court by way of Defendant New Jersey Transit's ("NJT") motion for summary judgment against pro se Plaintiff Bernard Shabazz. ECF No. 48. Shabazz has not opposed the motion. For the reasons stated below, the Court **GRANTS** the motion.

**I. BACKGROUND**

In this employment suit, Plaintiff Bernard Shabazz, an African-American man, claims that he was discriminated against based on NJT's alleged failure to provide him with timely disability payments.

**A. Injury and Disability Payments**

Shabazz is a New Jersey resident who was employed as a Bus Operator by NJT from 2002 to 2015. Am. Compl. ¶ 1, ECF. No. 23. On January 17, 2013, Shabazz filed a Worker's Compensation Occupational Claim for an injured lumbar spine. See Trasi Cert., Ex. J, Plaintiff's Worker's Compensation Occupational Claim dated January 17, 2013. On January 24, 2013, Shabazz submitted a Medical Certificate for his Occupational Claim, signed by his physician, Mark Pressman, M.D. Trasi Cert., Ex. L, Worker's Compensation Medical Certificate, Dr. Mark

1

Pressman, January 24, 2013. The Medical Certificate noted that Shabazz was under care for Congenital Spondylosis in the Lumbosacral Region. Id. After his Workers Compensation claim was denied by Liberty Mutual, which managed NJT employees' Workers Compensation claims at all relevant times, Shabazz applied for disability benefits instead on February 13, 2013. See Def.'s Stmt. ¶¶ 28-46. NJT's Worker's Compensation and Disability Unit approved Shabazz's Application for Payment of Disability Benefits on February 22, 2013. Id. ¶ 47. On March 1, 2013, Shabazz received payments in the amount of $2,807.87 for pay-periods covering the period of January 12, 2013 through February 22, 2013. Id. ¶ 48. Shabazz returned to work on his scheduled return date of February 25, 2013. Id. ¶ 49.

### B. EEOC Complaint and Subsequent Litigation

On March 15, 2013, Shabazz filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 6, Def.'s Stmt. of Facts ¶ 1, ECF No. 47-1.[1] In the complaint, Shabazz stated that he became disabled on or about January 24, 2013. See Trasi Cert., Ex. A, Plaintiff's EEOC Charge of Discrimination dated March 15, 2013. In his application, Shabazz stated, "I have been out of work for over a month and have not received a paycheck. Meanwhile, similarly situated White employees receive their compensation immediately when they go out on medical leave." Id. Shabazz claimed that he was discriminated against on the basis of race in violation of Title VII of the Civil Rights Act of 1964. Id.

On August 28, 2013, the EEOC issued Shabazz a Notice of Right to Sue ("NRTS") informing him that he could pursue a lawsuit based on his Title VII claim "within 90 days" of his receipt of the NRTS. See Trasi Cert., Ex. B, Letter from EEOC Newark Area Office to Plaintiff

---

[1] Because Shabazz has not filed a Statement of Facts in accordance with Local Civ. R. 56.1., the Court will cite to his Amended Complaint, along with NJT's Statement of Facts and Exhibits.

2

dated April 21, 2014 ("EEOC Letter Dated April 21, 2014"). On April 7, 2014, at Shabazz's request, the EEOC sent him another copy of the August 28, 2013 NRTS, and once again informed him that he would have 90 days from the date of the April 7, 2014 NRTS in which to sue. Def's Stmt. ¶¶ 4-5; EEOC Letter Dated April 21, 2014. The EEOC sent Shabazz a final piece of correspondence on April 21, 2017 in response to a letter dated April 14, 2014, informing him that:

> If you never received the August, 2013, NRTS and only now received a copy of the NRTS in April, 2014, you only have 90 days from receipt of this latest (April) notice in which to file a lawsuit. If you do not file a lawsuit within the statutory 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC.

Id.

Shabazz then commenced this lawsuit on July 21, 2014. See Compl., ECF No. 1. He amended his Complaint on March 10, 2016, asserting causes of action for violations of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., arising from discrimination and retaliation; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1981a; and (4) 42 U.S.C. § 1988. Am. Compl. ¶ 3. NJT sought dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 26. On October 11, 2016, the Court granted the motion in part, dismissing Shabazz's causes of action under 42 U.S.C. § 1981, 42 U.S.C. § 1981a, 42 U.S.C. § 1988, and Title VII claims against individual defendants. See Order dated October 11, 2016, ECF No. 36. The Court did not dismiss Shabazz's Title VII claims against NJT. Id. After completing discovery, NJT moved for summary judgment on Shabazz's remaining Title VII claim. ECF No. 48.

C. **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party

3

is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

Where the Plaintiff is proceeding pro se, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v. Kemer, 404 U.S. 519, 520-21 (1972)).

**D. ANALYSIS**

Shabazz asserts Title VII violations arising from disparate treatment, disparate impact, and retaliation, all on the basis of race. NJT argues that these claims should be dismissed because they are time-barred, and because Shabazz has failed to establish a prima facie claim of discrimination. The Court agrees.

**A. Statute of Limitations**

Under Title VII, plaintiffs have a 90-day period in which to file their claims after the EEOC issues them a NRTS. See 42 U.S.C. § 2000e-5(f)(1); Mosel v. Hills Dep't Store, 789 F.2d 251, 252-53 (3d Cir. 1986). The 90-day period beings to run when the plaintiff receives, either actually or constructively, the NRTS. Id.

Here, Shabazz filed a Charge of Discrimination with the EEOC on March 15, 2013, and was issued an initial NRTS on August 28, 2013. Shabazz informed the EEOC that he did not receive this letter, and requested another NRTS. The EEOC issued a second NRTS on April 7, 2014. As such, Shabazz had 90 days from the receipt of the April 7th NRTS, or until about July

10, 2014,[2] to file his claim. He did not file his claim until July 21, 2014, eleven days after the 90-day period had concluded. Shabazz has not disputed NJT's timeline, and there is no evidence before the Court that contradicts it. Accordingly, Shabazz's Title VII claim must be dismissed as time-barred.

### B. Disparate Treatment Discrimination

Shabazz alleges disparate treatment discrimination on the basis of race for receiving delayed disability benefit payments. Even if his disparate treatment claims were timely, NJT argues they must still be dismissed because he has failed to allege an adverse employment action. The Court agrees.

Shabazz alleges discrimination based on circumstantial evidence. As such, his disparate treatment claims are subject to the McDonnell Douglas burden-shifting framework. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see also Victor v. N.J., 203 N.J. 383, 408-09 (2010). Under this framework, a plaintiff must first establish a prima facie case of unlawful action by the employer. McDonnell Douglas, 411 U.S. at 802. "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001)).

To establish a prima facie claim for employment discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." Robinson v. Horizon

---

[2] Fed. R. Civ. P. 6(e) provides that courts may presume receipt three days after mailing.

Blue Cross Blue Shield of N.J., No. 12-2981, 2015 WL 4603647, at *4 (D.N.J. July 30, 2015) (citing Rodriguez v. Nat'l R.R. Passenger Corp., 532 F. App'x 152, 153 (3d Cir. 2013)).

An adverse employment action is one by an employer "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. SEPTA, 796 F.3d 323, 326 (3d Cir. 2015) (quoting Storey v. Burns Int'l Sec. Serv., 390 F.3d 760, 764 (3d Cir. 2004)) (internal quotation marks omitted); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with different responsibilities, or a decision causing a significant change in benefits . . . . A tangible employment action in most cases inflicts direct economic harm.").

If the plaintiff meets this initial burden, the burden shifts to the defendant, who must articulate legitimate, non-discriminatory reasons for its employment decision. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008); Victor, 203 N.J. at 408 n.9. This burden has been described as "'relatively light,'" and is deemed "satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." Burton, 707 F.3d at 426 (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)). Once the employer meets its burden of articulating a legitimate, non-discriminatory reason, the burden again shifts to the employee to present evidence from which a factfinder could infer that the proffered reasons were pretextual. Jones, 198 F.3d at 410; Victor, 203 N.J. at 408 n.9.

Here, NJT's payment of disability benefits to Shabazz did not constitute an adverse employment action because the record shows that the timing of his payments was not delayed. Shabazz claims he should have started to receive disability benefits in January 2013, but he did

6

not file an application for the benefits until February 13, 2013. Def.'s Stmt. ¶¶ 43-50. The application was approved less than ten days later, on February 22, 2013, and paid out on March 1, 2013. Id. ¶¶ 47-48. The benefits covered the entire time period that Shabazz was unable to work. Id. The record shows that NJT adhered to its Medical Policy at all times in processing Shabazz's claim. Id. ¶¶ 36, 38.

Moreover, Shabazz has not pointed toward any fact facts that could suggest that the payment of disability benefits was made under circumstances that give rise to an inference of discrimination. See Baxter v. AT&T Commc'ns, 712 F. Supp. 1166, 1171-72 (D.N.J. 1989) ("To establish employment discrimination based on race, [a] plaintiff must show that [defendant] bore a racially discriminatory animus against him and that this animus was a determinative factor in the treatment accorded him during his tenure."). Shabazz alleges that several NJT employees, including the Director of NJT, a former Manager of NJT's Worker's Compensation and Disability Department, and the Regional Supervisor of NJT, held a racial animus against him. Am. Compl. ¶ 15. However, he has not submitted any evidence that indicates that these individuals expressed any animus towards him. Indeed, he testified during a deposition that his allegations are based on his personal perceptions. He stated:

> Actions speak louder than words. She, [a former Manager], does not have to say anything. She did not—from delaying and denying your payment, that's saying it. No words are necessary.

Shabazz Depo. Tr. 225:8-21, ECF No. 47-13. Despite Plaintiff's subjective feelings, such "speculations, generalities, and gut feelings, however genuine, do not permit an inference of discrimination to be drawn." Lane v. Sears Logistics Servs., Inc., No. 11-6157, 2014 WL 1301549, at *4 (D.N.J. Mar. 31, 2014); see also Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567

7

(5th Cir. 1983) (a "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief").

Shabazz claims that other African-American Bus Operators also experienced a delay in benefit payments, but his Caucasian colleagues did not. However, he has not demonstrated that any of these individuals were in a position similar to his own. Although minimal assertions of more favorable treatment of members of a non-protected group may create an inference of discrimination at the pleadings stage, at summary judgment, a plaintiff must provide "evidence from which to infer discrimination apart from the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group." Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998). Shabazz has not done so here. Indeed, the African-American workers he identifies who received disparate treatment had not applied for disability benefits like Shabazz. Def.'s Stmt. ¶ 68-69.

Accordingly, Shabazz's disparate treatment claims must be dismissed.

### C. Disparate Impact

To prove disparate impact, a plaintiff must show that an "application of a facially neutral standard has cause a significantly discriminatory . . . pattern." NAACP v. N. Hudson Regional Fire, 665 F.3d 464, 476-77 (3d Cir. 2011). "This prima facie showing requires the plaintiff to prove a significant statistical disparity and to demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking." Id. (internal citations omitted).

Here, Shabazz has not set forth any statistical information about payment of disability benefits towards African-American NJT employees. While he has pointed to a statistical difference in the make-up of the Bus Operators at Orange Bus Garage (80% African-American)

8

compared to the Holwell, Meadowlands and Fairview Bus Garages (80% are Caucasian), Am. Compl. ¶ 12, he has not pointed to any differences in the way in which disability payments were distributed to the workers of the different Garages. Accordingly, Shabazz's claim of disparate impact must be dismissed.

### D. Retaliation

Finally, NJT argues that even if Shabazz's claims are not time-barred, his retaliation claim must be dismissed for failing to establish that an adverse action was taken against him in response to his engagement in a protected activity. The Court once again agrees.

To establish a prima facie case of unlawful retaliation under Title VII, "a plaintiff must tender evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006) (quotation omitted).

Once again, courts apply the McDonnell-Douglass analysis for Title VII retaliation, requiring the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action, which the plaintiff may rebut by showing the employer's stated legitimate business reason is a pretext for the retaliatory act. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997).

Here, Shabazz alleges that he experienced retaliation "[i]mmediately after [he] began to complain about the discriminatory policies and practices at New Jersey Transit." Am. Compl. ¶ 15. In particular, he alleges that he received "unsubstantiated write ups by supervisors for alleged rule violations. For example on June 5, 2012, plaintiff received a write up for Careless Operation, Poor Driving." Id. The write up was ultimately dismissed in arbitration. Id. But the record shows

9

that this allegedly retaliatory event took place before any of Shabazz's alleged protected activities. The earliest complaint that Shabazz states he filed was in March 15, 2013, nine months *after* the allegedly retaliatory action. Am. Compl. ¶ 6. Accordingly, Shabazz has not established a prima facie case of retaliation because he has not shown that there was a causal relationship between his protected activity and an adverse action that was taken against him.

In addition, Shabazz raised, for the first time in his deposition, three more alleged instances of retaliation: (1) a write up he received for an Americans with Disabilities Act Violation on August 24, 2014; (2) a violation he received for Cutting Scheduled Work on September 26, 2014; and (3) receiving an order from his supervisor to attend a class on customer complaints on October 8, 2014. Def.'s Stmt. ¶¶ 84. The Court does not address these claims because Shabazz did not allege these retaliatory events in his Complaint or his Amended Complaint. See Davis v. Southeastern Pa. Transportation Authority, No. 13-6864, 2016 WL 97922, at *4, n.8 (E.D. Pa. Jan 8, 2016) (holding that the court could not consider retaliatory events raised by plaintiff for the first time in summary judgment opposition brief) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)).

Even if the Court did consider Shabazz's newly alleged incidences, they do not form the basis of a retaliation claim because are not "materially adverse actions." A materially adverse action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from [engaging in protected activity]." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, (2006). The write ups and orders that Shabazz received here did not lead to any actions taken against him. Moreover, he admits that he did not attend the course on customer complaints. Def.'s Stmt. ¶¶ 84-85, 91-83. In addition, he has not shown any causal relationship between his protected activity and the alleged retaliatory actions. NJT has pointed to other causes for the actions, which

Shabazz has not refuted. For instance, the August 24, 2014 ADA violation write up was issued after a mechanic reported Shabazz's error of parking the bus too close to the curb. Id. ¶ 85. His September 26, 2014 write up by a Regional Manager was for failure to pick up a passenger. Id. ¶ 92. Finally, Shabazz concedes that the order to take a course on customer complaints directly stemmed from a customer complaint against him. Id. ¶¶ 96, 99. Accordingly, Shabazz's retaliation claim must be dismissed.

**III. CONCLUSION**

For the reasons set forth herein, Defendant NJT's motion for summary judgment is **GRANTED**.

**Dated: August 22, 2017**

> */s Madeline Cox Arleo*
> **Hon. Madeline Cox Arleo**
> **UNITED STATES DISTRICT JUDGE**